F. A. FINN AND WIFE v. CARL KRUT, ALIAS LINSTROM.

No. 1491.

1. **Continuance.**

See opinion for circumstances under which the discretion of the court was held properly exercised in overruling an application for a continuance for want of testimony of a subpœnaed witness, a party to the suit, whose ex parte deposition was on file and available as testimony.

2. **Evidence—Consideration of Deed.**

Parol evidence is admissible to show the real consideration for a deed, though a

different one was expressed in it, when the expressed consideration is not a contract stipulation; and the fact that the deed is attacked by a creditor for fraud, does not change the rule.

### 3. Same—Harmless Error.

Improper admission of evidence is immaterial where same fact was proven by other evidence without objection; also where findings on other points would require the same judgment if the evidence were admitted.

### 4. Acquisition of Homestead—Fraud.

A disposition of property subject to execution for the purpose of procuring a homestead will not be deemed a fraud on creditors. Without a previous lien such creditors can neither sell the homestead so acquired nor follow the property exchanged for it.

### 5. Absence of Testimony—Immaterial Error.

A finding of fact by the court, though without evidence to support it, will be deemed immaterial error where the judgment of the court did not depend upon it, and was supported by other independent findings based on evidence.

### 6. Homestead—Fraud—Vendor's Lien—Removing Cloud—Limitation.

K. and L., heads of families, lived on separate tracts of land in each of which they each owned an undivided interest. They exchanged their undivided half interests in the respective tracts, whereby L. converted his interest in K.'s tract, which was subject to execution, into one in his own place of residence, which, when so acquired, became homestead. Previous to this exchange, in consideration of F., the vendor of the tract occupied by L., procuring an extension of time upon a lien held by a former vendor against that tract, L. had executed a note to F.'s wife which recited that it was given for purchase money of L.'s tract, but retained no express lien. K. agreed to sign the note but did not. F., having obtained judgment against L. on the note, levied on and sold his interest in K.'s home—which L. had conveyed to K. in exchange for K.'s interest in L.'s—claiming that this transfer was made to defraud L.'s creditors. Held:

1. L. had a right to make such exchange and it was not fraudulent in law, though done to place his property in a homestead free from creditors.

2. The note, not in fact given for purchase money, created no lien, express or implied, against the land by reciting that it was so given.

3. K. was entitled to cancellation of the sheriff's deed as a cloud on his title.

4. He was not bound by the note, not having signed it, and his parol promise to do so was barred by statute of limitations of two years.

APPEAL from Travis. Tried below before Hon. F. G. MORRIS.

*Hewlett, Rosenberg & Rosenberg,* for appellants.—1. Defendants under their showing for a continuance of the cause, were entitled to the testimony of their codefendant, John Linstrom, in person from the witness stand in the presence of the court, that his manner of testifying might be observed as well as because of his cognizance of all facts upon which the defense was entirely grounded; that is to say, the fraud between himself and the plaintiff in the conveyance of the land in controversy, he being an adverse witness whom defendants were forced to call to establish their defense. Rev. Stats., arts. 2212 to 2217; Greenl. Ev., 443.

2. The conveyance of the land in controversy by Linstrom and wife to Krut being purely voluntary and therefore fraudulent as to existing creditors, parol evidence is not admissible to show that such conveyance was upon the other, further, additional and valuable consideration as attempted to be shown by the testimony sought to be elicited, to-wit: the exchange or partition of land. Huston v. Blackman, 66 Ala., 564;

Potter v. Gracie, 58 Ala., 308; Murphy v. Bank, 16 Ala., 90; Galbraith v. Cook, 16 Ark., 417; Waite on Fraudulent Conveyances and Creditors' Bill, sec. 221; Hinde's Lessee v. Longworth, 11 Wheat., 214; Betts v. Bank, 1 Harr. & Gill, 175; Ellinger v. Crowl, 17 Md., 361; Taylor v. Merrill, 64 Texas, 494; Rogan v. Williams, 63 Texas, 128; 1 Greenl. Ev., secs. 375, 289, 297.

3.  The conveyance from Linstrom to Krut is per se fraudulent, because of its being voluntary and one by which he rendered himself insolvent.  2 Biglow, Frauds, 184; Snyder v. Fine (Mo. Sup. Ct.), 21 S. W. Rep., 847.

4.  The consideration for the conveyance of the land in controversy by Linstrom to Krut as expressed in the deed, being one not deemed valuable in law, renders the deed purely voluntary, and therefore fraudulent as to existing creditors, without regard to the intent of the parties to its execution.  Huston v. Blackman, 66 Ala., 564; Galbraith v. Cook, 30 Ark., 417; Ridgeway v. Underwood, 4 Wash. (U. S.), 129.

5.  The statute of frauds levels its denunciation at a conveyance by way of partition, if done with intent to delay and defraud creditors, as well as at any other writing given with like intent.  Rev. Stats., arts. 2465 and 2466.

6.  The fact that by this conveyance to Krut, Linstrom in effect converted the proceeds received by him therefor into homestead, and therefore exempt property, Krut having knowledge of the object of Linstrom in doing so to defraud his creditors, does not preclude existing creditors from pursuing the property conveyed to Krut by Linstrom, and in Krut's possession in fraud of their rights.  Riddle v. Shirley, 5 Cal., 488.

7.  There was error in law in excluding from the evidence and its consideration by the court of the judgment, execution and return thereon in favor of J. L. Hume against the defendant, John Linstrom, as set forth in defendant's third bill of exception, because:

First.  The defendant, Christine Finn, was at the time an existing creditor, but whose debt was not matured, and she was entitled to show and avail herself of the fact, if true, that there was present in the minds of Linstrom and Krut at the time of executing said deed and its acceptance, the specific intent and purpose of thereby hindering and delaying his existing creditor, J. L. Hume, who was pressing for payment of his debt.

Second.  It is the motive, intent and purpose prompting the act of conveyance at which the statute of frauds levels its denunciation, and if the act be fraudulent as to one, it is fraudulent as to all existing creditors.  And defendants were entitled to the testimony evidenced by the judgment, executions and the respective returns thereon, to show the fraudulent motive, intent and purpose which prompted Linstrom in executing and Krut in accepting the conveyance of the land in controversy. Day v. Stone, 59 Texas, 614; Cox v. Trent, 1 Texas Civ. App., 641.

8.  The court erred in its seventh finding of fact, which is as follows:

"If Linstrom had the intent to hinder and defraud his creditors, F. A. Finn and wife, in making said sale, Krut is not shown to have had any knowledge of such intent.   And as it might reasonably be supposed that an able-bodied man, as Linstrom was, would make sufficient income on a farm of 150 acres in three years to pay a debt of $500, then to mature, I find that the circumstances were not such as to put a prudent business man upon inquiry as to the existence of a fraudulent intent on the part of Linstrom, if any existed." Because there was no testimony before the court showing said Linstrom to be an able-bodied man.

Because the preponderance of the testimony shows that Carl Krut knew of the existence of Linstrom's indebtedness to Hume, and also to Christine Finn, at the time of the execution of said deed; that he was well informed of Linstrom's affairs, and knew that his interest in the land in controversy conveyed to him by Linstrom was all the property owned by him in this State subject to execution, and that by such conveyance he (Linstrom) rendered himself insolvent.

9.   There was error in law in the third paragraph of the court's conclusions; said paragraph reads thus: "I find that the said Krut, being a co-tenant with Linstrom in two tracts of land, has a right to a partition with Linstrom, which could not be affected by Linstrom becoming insolvent, in debt, or by any intention which Linstrom may have had to place the part which he might have obtained beyond the reach of creditors; especially when a verbal partition has been virtually effected, by agreement under which they bought the two tracts of land."

Because the rights of existing creditors to rely upon property not at the time exempt for the satisfaction of their claims, is not subject and subordinate to secret or undisclosed verbal understandings between tenants in common to separate and distinct tracts of land, on one of which the homestead character had not been impressed by the debtor, either in fact, by use, intention or designation for that purpose.   Sayles' Civ. Stat. of Texas, arts. 2465 and 2466.

10.   There was error of law in the fourth, fifth and sixth paragraphs of the conclusion of law:

First.   Because the law accords to the creditor the right to pursue the property fraudulently conveyed by his debtor, into whomsoever the possession may come, who takes with knowledge or notice of the fraud committed by the grantor in conveying it.

Second.   Because the fact that defendant cannot pursue the property converted by Linstrom into homestead, that he received in exchange for that he conveyed to Krut, presents no obstacle in law to subjecting the property received by Krut from Linstrom, he being in law equally guilty with Linstrom in the perpetration of the fraud upon the latter's creditors.   Riddle v. Shirley, 5 Cal., 488.

11.   There was error in not rendering judgment in defendants' favor against Carl Krut for the balance unpaid on the note from Linstrom to Christine Finn, because the preponderance of the testimony shows that in the transaction eventuating in the execution of said note that Lin-

strom was Krut's agent in making such transaction, and acted with his authority, knowledge and consent; but if not, that he afterwards, with full knowledge and information concerning said transaction, ratified and confirmed it, and having profited by the transaction he will not be heard to repudiate his obligation thus contracted. Bishop, Con., secs. 286, 1109.

12. The court erred in rendering judgment for plaintiff against defendants for the land described in plaintiff's petition. The court erred in not rendering judgment for defendants against Krut for an undivided one-half of Linstrom's interest in the land in controversy.

*Walton & Hill*, for appellee.—1. The evidence to show the real consideration of the deed was admissible. Swayne v. Chase, 30 S. W. Rep., 1049; North v. Shearn, 15 Texas, 175; Gibson v. Fifer, 21 Texas, 263; Howard v. Davis, 6 Texas, 174; Glenn v. Matthews, 44 Texas, 456; Thomas v. Hammond, 47 Texas, 52; Railway v. Jones, 82 Texas, 161; Rubrecht v. Powers, 2 S. W. Rep., 320; Taylor v. Merrill, 64 Texas, 496; Wharton, Ev., sec. 1044; 1 Greenl. Ev., 285; Hitz v. Bank, 111 U. S., 725-727; Johnson v. Johnson, 65 Texas, 88.

2. The conveyance by Linstrom to Krut, being a deed evidencing a prior verbal partition or partition by acts, and on proper and lawful consideration, is valid and effective. Same authorities.

3. The evidence as to the Hume debt was properly excluded, because: (1) It was not alleged, nor pleaded. (2) Krut went security therefor. (3) It was paid in due course.

The intent to hinder, delay and defraud must be double: (1) motive on part of vendor; (2) knowledge on the part of vendee. Freeman v. Humphries, 22 Texas, 45; Taylor v. Townsend, 61 Texas, 146-147.

The head of a family may establish a homestead to the exclusion of creditors. North v. Shearn, 15 Texas, 175; Swayne v. Chase, 31 S. W. Rep., 1049.

4. Findings of fact by the court sitting as a jury, before being reversed, must appear clearly wrong.

5. The want of motive and intent on the part of Linstrom to defraud, hinder and delay Finn, as found by the court as a fact, and the want of knowledge on the part of Krut of a motive, intent and purpose that did not exist, fixes the transfer of the property as fair, lawful and valid.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by Carl Krut, alias Linstrom, December 24, 1894, against his son John Linstrom and his son-in-law F. A. Finn and his wife Christine Finn, who is the daughter of plaintiff, to annul a lien on his 183 acres of land, to remove cloud from title to the same, and for $380 and interest, and for punitory damages. The suit grew out of the following facts:

1. On September 1, 1882, F. A. Finn bought from Jos. W. Hannig 707 acres of land near Manor, Texas, for $12,726, executing his four

notes for the amount, bearing eight per cent interest from September 1, 1883, due respectively January 1, 1887, January 1, 1888, January 1, 1889 and January 1, 1890. The notes stipulated that, in case of default of payment of principal or interest when due, all the notes should become due; the notes and the deed retained vendor's lien upon the land to secure the payment of the purchase money notes.

2. On January 1, 1883, F. A. Finn and wife Christine Finn conveyed to Carl Krut (Linstrom) and John Linstrom 200 acres of the land bought from Hannig, for $3600, for which they executed their four notes due January 1, 1887, January 1, 1888, January 1, 1889, and January 1, 1890, bearing same interest as the notes to Hannig and containing same stipulations. The deed and notes stipulated for vendor's lien. A copy of the deed is attached to defendant's answer, which we make a part of our finding.

3. At the time of the sale and purchase Carl Krut and son John Linstrom owned another survey of land, 150 acres, out of the William Caldwell survey. John Linstrom was then and is still residing on the same as a homestead, and Carl residing on the survey of 200 acres bought from him, as their homesteads, both being heads of families.

On September 15, 1886, F. A. Finn, anticipating that Krut and Linstrom would not be able to pay their first note to him for the land sold them, due January 1, 1887, and that he, Finn, would not be able to pay his first note to Hannig on the same date, agreed with John Linstrom to sell the balance of the land owned by him out of the 707 acres bought by him of Hannig; that is, agreed to sell his unsold 524½ acres in order to raise money and to protect his warranty to Krut and Linstrom, and to protect the land sold by him to them from the vendor's lien on the whole 707 acres, if John Linstrom and Carl Krut would execute their note to him for $500, additional purchase money for the land (200 acres) before conveyed by him and wife to them, Finn agreeing to extend or secure the extension of their first note to him. To this proposition John Linstrom agreed, after consulting with Krut, but without fully explaining the details of the transaction to him, and Krut agreed thereto, with the qualification that the note should be made payable to Finn's wife, who was the daughter of Krut. Finn wrote the conditional obligation set out in the pleadings of both parties, intending it to be signed by both Krut and John Linstrom. It was signed only by John Linstrom, when he reported to Krut that he had arranged the land matter, but Krut, though having agreed to do so, did not sign the instrument, and the testimony does not show that he saw it until long afterwards, when Finn exhibited it to him in April or May, 1889, and explained it to him in the Swedish language, Krut being an aged Swede, understanding very little English. Krut became angry, and refused to sign or recognize the obligation. The obligation so signed alone by Linstrom became due January 1, 1892.

5. On February 23, 1887, Finn sold his unsold part of the 707 acres of the Hannig land, 524½ acres of it, to Mrs. A. H. Terrell, and the notes

of Krut and Linstrom, she assuming his obligation to pay for all the land to Hannig, and to extend the time of payment of Krut's and Linstrom's first-due note for one year, thus leaving Finn without any interest in the land except what he claimed in the note or obligation for $500, executed by Linstrom to him.

6. On December 23, 1889, John Linstrom conveyed to Carl Krut his undivided half of the 200 acres bought by them from Finn and wife, in exchange for Krut's undivided half interest in the 150 acres out of the Caldwell survey, on which Linstrom resided as a homestead. The deed from Linstrom to Krut expressed only a nominal consideration of $1. At this time there were $450 due on the 150 acres as purchase money, and about $2000 of the purchase money on the 200 acres, or the $183\frac{1}{10}$ acres, a small tract of it having been sold out by Krut and Linstrom, Linstrom intending to make the 150 acres his homestead, and Krut intending to hold the 183 acres as his homestead. Linstrom intended, however, to avoid the payment of $500, which was to become due to one Hume three years later, the only debt shown to be owing by him at the time, except one which he subsequently paid, and the unpaid purchase money notes before stated and the obligation to Finn. There is no pleading that he sold to Krut to defraud any creditor but Finn.

7. If Linstrom intended to defraud any creditor in making the note to Krut, the testimony does not show that Krut had any knowledge of such fraud at the time of the exchange of lands by them.

8. On November 4, 1892, F. A. Finn and wife sued John Linstrom on his obligation for $500, and recovered judgment against him on November 17, 1892, for $1013.95, principal, interest and attorney's fees, and all costs, with foreclosure of lien on his interest in the 183 acres of land then held by Krut, Linstrom having no interest in the land condemned to sale for his debt. Order of sale was issued and sale made as under execution on February 13, 1893, Finn becoming purchaser, to whom deed was executed by the sheriff, as alleged in plaintiff's petition; Finn crediting the purchase price on his judgment.

9. On January 4, 1894, Krut, having heard some rumor that Finn intended to take 100 acres of his land to pay the Linstrom note, but being ignorant of the judgment against Linstrom and the sale of the land, on request made by Finn that he pay the demand, paid to Finn $380, for which Finn gave him a receipt for so much paid on the judgment, and entered it on the abstract of judgment.

The foregoing are substantially the conclusions of fact found by the court below, and they are warranted by the testimony, from which the court deduced the following conclusions of law:

"1. That the obligation executed by John Linstrom had sufficient consideration to support it, in the agreement of Finn to allow or obtain an extension of time of payment of the first note owing by Linstrom and Krut on the 183-acre tract of land; and that it was a binding written obligation on the part of Linstrom; and that the said Krut was bound by his verbal agreement to join Linstrom in a note for that

amount, after Finn, by making it a part of the agreement in selling said notes that the time of payment of the first note should be extended, had acted on the faith of the agreement of Krut to sign said note.

"2. That said obligation, not being in fact for a part of the purchase money, and not containing any express stipulation for a lien on the land, did not create a lien on the land.

"3. That the said Krut, being a co-tenant with Linstrom in two tracts of land, had a right to a partition with Linstrom, which could not be affected by Linstrom being involved in debt, or by any intention which Linstrom may have had to place the part which he might obtain beyond the reach of his creditors; especially when a verbal partition had been virtually effected by agreement under which they bought the two tracts of land.

"4. That the intention (if Linstrom had the intention) to obtain the undivided interest in the land on which he resided and in which he owned a half interest, with a view to placing it beyond the reach of his creditors as a part of his homestead, by conveying an undivided interest in another tract which was subject to execution, cannot be deemed fraudulent in law; and though such action might hinder and delay creditors, like preference legally hinders and delays other creditors. Every man owes his family a homestead out of his property, if he has sufficient property to acquire a homestead, and he may prefer this debt to others, even after he has become insolvent. The proposition that the placing of property beyond the reach of creditors by putting it into a homestead is not a fraud, has been affirmed in this State. North v. Shearn, 15 Texas, 175; Swayne v. Chase, 30 S. W. Rep., 1049. It is contended by defendant that, while a creditor may not follow property which has been converted into exempt property, yet he may follow the property which was disposed of for the purpose of acquiring property which would be exempt from execution. This proposition cannot be sound. The law does not protect a fraudulent transaction and permit the party perpetrating the fraud to hold the fruits of his fraudulent acts. If it were a fraud upon creditors to dispose of property subject to execution for the purpose of acquiring exempt property, the law would follow the fruits acquired in this fraudulent transaction, as long as they could be traced into property. If it be not a fraud to place property on hand, which is subject to execution, out of the reach of creditors by making a home on it, it cannot be fraudulent to exchange property which might have been thus converted into a home for other land with the intention of converting the property acquired into a home. If there is no fraud on the part of the vendor, the vendee must be permitted to hold the land conveyed, because it is not fraud on the part of the vendee that avoids the sale; it is the fraud of the vendor, brought to the knowledge of the vendee, or of which he may have constructive notice, which avoids the sale. There cannot be a fraudulent purchaser without a fraudulent vendor. Sanger Bros. v. Colbert, 84 Texas, 673.

"5. That plaintiff cannot recover the money paid Finn, because he

was under obligation with Linstrom to pay the whole of the debt, though not bound in writing.

"6.  I find that the defendants cannot recover against Krut, because it appears from their pleadings and from the plaintiff's pleadings and the evidence that defendants have already obtained a several judgment against Linstrom on the same demand, and they are not entitled to a several judgment against Krut for this entire demand without suing Krut and Linstrom and merging the first judgment into one judgment.

Again, it appears that defendant's right of action is barred by the two years statute of limitations which is pleaded; as Krut did not execute an obligation in writing, and as Linstrom did not execute it for Krut, but only for himself, expecting Krut to sign it as he had agreed he would do."

Judgment was rendered that Krut was entitled to cancellation of the sheriff's deed to Finn, removing cloud from his land, the 183 acres, as prayed for, and that he be quieted in his title as against the claim of Finn under the sheriff's deed; that plaintiff take nothing against Finn on his claim of $380 for money paid Finn, or on his claim for punitory damages, and that plaintiff take nothing on his suit against Linstrom; that Finn and his wife, Christine Finn, take nothing on their cross action against Krut and Linstrom, and that plaintiff recover all costs against Finn.  Finn and wife and Krut excepted to the judgment of the court, and gave notice of appeal.  Finn and wife alone have perfected the appeal, by cost bond only.

*Opinion.*—1.  We cannot say that the court erred in overruling the application to continue the cause made by Finn and wife on account of the absence of defendant Linstrom upon whom subpoena had been served.  Defendants had taken his ex parte depositions which plaintiff had moved to suppress, but plaintiffs offered to withdraw their objections to his testimony and permit his answers to be read as an answer to the motion to continue.  To this defendants Finn and wife replied that the depositions will not supply the materiality of the testimony of the witness in view of the state of the issues arising from the rulings of the court upon demurrers, the reason for which rulings the applicants did not know until the 25th of May—the application being filed on May 27, 1895, requiring other facts to be proved not provided for in the depositions on file.  The court overruled the application upon the ground that plaintiff had withdrawn his objections to the depositions on file and waived the suppression of the same, and because there were no issues presented by the pleadings subsequent to the depositions of the witness, or that did not exist at the time of the propounding of the interrogatories.  We cannot see but that the court was correct in the reason assigned for refusing to grant the application.

Defendants now contend that they were entitled to the personal presence of defendant Linstrom before the court that his manner of testifying might be observed, there being an issue of fraud perpetrated by him

of which his father, the plaintiff, was alleged to have cognizance. It does not appear that the court abused its discretion in the matter complained of. The application is based upon alleged materiality of the testimony of an absent witness and diligence to procure the testimony. There is no objection to the court's ruling upon the question so made, or to his reasons for overruling the application, but there is another objection made to it in this court which goes to the exercise of the discretion of the court. We cannot say that the court abused its discretion in the matter, and hence cannot say that there was error in refusing the continuance.

2. Appellants contend that the court erred in admitting testimony and answers of Krut and Linstrom showing the real consideration for the deed of John Linstrom and wife Sophia, of date December 23, 1889, to Carl Krut, to the land in controversy; because the fact could not be proved as against a creditor of Linstrom assailing the deed for fraud, the consideration expressed in the deed being one dollar, and because the testimony tends to show a consideration different from that expressed in the deed.

The deed expressed a consideration of one dollar. The testimony objected to showed that the conveyance was the result of an agreement between Krut and Linstrom to deed and partition between themselves their two tracts of land owned jointly by them, Linstrom to take the 150 acres on which he resided and pay the balance purchase money due thereon, about $450, and Krut to pay off the vendor lien notes outstanding against the 183 acres, $2000 or more.

Linstrom's object was to acquire all the 150-acre survey for a homestead, owning, as he did, an undivided one-half of it, and residing upon it as a home, and the object of Krut was to own the whole of the 183 $\frac{7}{10}$-acres for a homestead. Such purposes were legal, and they both had the right to make the exchange. A disposition of property subject to execution for the purpose of procuring a homestead would not be deemed a fraud upon creditors. The head of a family has the right to invest his property in a homestead, and creditors without lien cannot complain that in doing so he uses property that could be levied on for debt, even though he is in failing circumstances. North v. Shearn, 15 Texas, 175; Swayne v. Chase, 30 S. W. Rep., 1049. It was proper under the issues to admit testimony showing the real consideration for the conveyance, though a different consideration was expressed in the deed. Gibson v. Fifer, 21 Texas, 263; Thomas v. Hammond, 47 Texas, 43; Railway v. Jones, 82 Texas, 161; Ellis v. Johnson, 65 Texas, 87.

Evidence is admissible to show a consideration different from that expressed in a deed when the consideration expressed is not a contract stipulation, and the fact that the deed is attacked by a creditor for fraud does not change the rule. The parties may show that there was in fact no fraud by testimony having that effect. There was no error in admitting the testimony.

3.    Defendants Finn and wife offered in evidence judgment of the District Court of Travis County in cause No. 8698, styled Jos. L. Hume v. John Linstrom, date October 11, 1888, in favor of said Hume against Linstrom for $500, with eight per cent interest from February 16, 1887, for which execution was awarded, and the first and second executions thereon and return on the same, the first issued January 5, 1889, returned March 1, 1889, not satisfied, in following words: "I demanded payment of defendant, which was refused; and he has no property within my knowledge subject to execution." The second execution for same judgment was issued December 12, 1889, returned showing that the officer called on Linstrom to point out property on which to levy, but which he failed to do; that the officer, at direction of plaintiff, called on J. H. Pope, who claimed a lien on land hereinafter described, and demanded that he point out property of John Linstrom in Travis County, which he did not do; that the officer then levied the execution on property pointed out as Linstrom's property by David Hewlett, attorney for the plaintiff in execution, on the interest of Linstrom in the land had by him on December 23, 1888; levy made on the 200 acres sold by Finn to Krut and Linstrom, less 16 $\frac{2}{10}$ acres sold by Krut and Linstrom to Mrs. Terrell; that the sale was advertised for the first Tuesday in February, 1890; that on February 4, the sale was postponed and the execution returned by order of plaintiff, not satisfied, as per agreement between Hume and Linstrom, which agreement is set out in full as a part of the returns. The agreement acknowledges the debt due by the judgment as $559.11, principal and interest due, an abstract of which judgment is declared to be recorded, fixing a lien on the land levied on; that Linstrom desiring an extension of time on the debt, has executed to Hume his three notes each for $186.37, due respectively February 1, 1891, January 1, 1892, and February 1, 1893, bearing ten per cent interest; therefore it is agreed that the execution be returned not satisfied, and that no other execution shall be issued until default of payment of either of the notes, and that if either of the notes be paid in part, the amount so paid shall be credited on the judgment, and if all the notes be paid, the judgment to be credited in full, Hume reserving the right, in case either of the notes are not paid, to deliver up the notes and proceed on his judgment to collect by execution the amount due, Linstrom to be liable on the judgment until paid in full, Hume having the right to elect to collect his debt by sale of the land under execution or to collect the notes. The agreement is dated February —, 1890, and is signed by Hume, Linstrom and his wife and Carl Krut.

Plaintiff objected to the testimony on the ground that the answers of defendants Finn and wife had placed in issue only the fraud of Linstrom as against defendant Christine Finn. The court sustained the objection and excluded the testimony, with the explanation that, though the pleadings limit the charge of intention to defraud to Christine Finn only, and not to creditors generally, yet the fact that Linstrom owed Hume a debt at the time of the conveyance to Krut was afterwards

proved without objection, which as appears in the findings of fact by the court rendered the testimony offered immaterial. Appellant assigns the ruling of the court as erroneous.

We can see no other purpose of the testimony than to show that Linstrom was in debt to Hume at the time of his deed to Krut of the land in controversy, and to indicate fraud in that sale. This fact was shown by other testimony without objection, and if there was error in the exclusion of the judgment, executions and returns, it was rendered harmless by the subsequent admission of the testimony showing the fact. There were many facts in the return of the officer that were not pertinent to any issue in the case. The fact of debt was the pertinent fact, and this was proved.

We again recur to the findings of the court that Linstrom made the sale to Krut to acquire a homestead, and this being true, the indebtedness and insolvency of Linstrom would be immaterial, as he could acquire a homestead by disposition of property subject to execution free from any imputation of fraud upon creditors.

4. The sixth finding of fact by the court is that, "If Linstrom had the intent to hinder and defraud his creditors, F. A. Finn and wife, in making said sale to Krut, Krut is not shown to have had any knowledge of such intent." The testimony supports this finding. The court proceeded to say: "And it might reasonably be supposed that an able-bodied man, as Linstrom was, would make sufficient income on a farm of 150 acres in three years to pay a debt of $500, then to mature. I find that the circumstances were not such as to put a prudent man upon inquiry as to the existence of a fraudulent intent on the part of Linstrom, if any existed." The testimony in the record supports all this finding, but that Linstrom was an able-abodied man, and this finding is assigned as error.

It is shown that Linstrom was forty-six years old. We do not believe the finding objected to was material. The judgment of the court did not depend on it. It would have been the same without the fact of Linstrom being an able-bodied man. We find no error in it.

The assignment of error to the sixth conclusion of fact of the court, that if Linstrom's intention in the sale or exchange of land to Krut, was to defraud his creditors, Krut did not know it, and was not put on inquiry of it, was amply supported by the evidence; and the assignment of error to the effect that the preponderance of evidence shows the contrary cannot be sustained.

5. We find no error in the conclusions of law derived from the facts found by the court, and we cannot sustain the assignments on these points. The note or obligation of Linstrom to Finn's wife is as follows:

"$500. AUSTIN, TEXAS, September 18, 1886.

"On the first day of January, 1892, after date, we or either of us, to pay to the order of Christine Finn five hundred dollars, for value received, with interest from date until paid at the rate of ten per cent per annum, payable annually, and if interest be not paid when due, to be-

come as principal, and bear the same rate of interest, and if this note is collected by suit, an additional ten per cent for attorney's fees; this note is given as part purchase money for two hundred acres of land out of the Simon Bacon survey in Travis County, Texas. This note is good and legal if August Finn sell the 524½ acres of land out of the above described tract of land in order to secure the warranty deed for 200 acres of land John Linstrom and Carl Krut bought of August Finn.

"(Signed)    JOHN LINSTROM."

The note was not, as it states, given for the purchase money for 200 acres of land out of the Simon Bacon survey. It was given for other purposes, as shown by the facts. No lien is expressed in the note, and the recital that it was given for purchase money of the 200 acres of land not being true, no lien would be implied by law on the land to secure the payment of the note, binding on Krut. Krut was not bound by the note. His obligation, if any, was in parol, and was, as found by the court, barred by the statute of limitations of two years.

The conclusions of law arrived at by the lower court are correct and authorized the judgment that was rendered. Finding no error in the judgment, it is affirmed.

*Affirmed.*

Delivered March 25, 1896.

Writ of error refused.