## J. L. LEWIS v. GOLDTHWAITE NATIONAL BANK ET AL.

Decided June 22, 1904.

**1.—Homestead—Sale—Exemption of Proceeds—Constitutional Law.**

The Act of April 26, 1897, exempting from garnishment for six months the proceeds of a voluntary sale of the homestead, was not unconstitutional in its application to prevent the collection, by garnishment of such proceeds, of a debt incurred by contract prior to the enactment of such statute and which the creditor had no other means of collecting.

**2.—Fraud—Proceeds of Homestead.**

It seems that no fraud on creditors would be committed by the debtor giving away the proceeds of a voluntary sale of the homestead not subject to their debts.

Appeal from the District Court of Mills. Tried below before Hon. John W. Goodwin.

*J. L. Lewis,* for appellant.

*R. L. H. Williams* and *E. B. Anderson,* for appellee.

FISHER, CHIEF JUSTICE.—This is a garnishment proceeding by the appellant against the Goldthwaite National Bank, as garnishee, based upon a judgment in appellant's favor against J. N. Shultz and Mrs. M. H. McGuire. The appellant sought to hold the bank liable as garnishee for funds on deposit in the bank belonging to appellee Shultz.

The appellees in effect answered that the funds for which the bank was sought to be held liable were the proceeds of a voluntary sale of the homestead of the appellee Shultz, made less than six months prior to the service of the writ of garnishment.

Judgment by the trial court was rendered in favor of appellees, in accordance with the theory suggested by their answers. The court filed conclusions of fact and law, which are as follows:

"1. That plaintiff herein, J. L. Lewis, on the 9th day of March, 1897, recovered in the District Court of Mills County, Texas, in cause No. 372, on the civil docket thereof, a joint and several judgment against the said Mrs. M. A. McGuire and J. N. Shultz, defendants in said suit, for the sum of $199.05 with 10 per cent interest thereon from its date, and all costs, which costs in the aggregate amount to the sum of $14.50, inclusive of the issuance and return of execution on said judgment, and which judgment I find is now and was on September 21, 1903, owned by J. L. Lewis.

"2. That said judgment has never been in anywise reversed or set aside and is a valid and subsisting judgment, execution thereon having been issued within one year from its said rendition and entry.

"3. That said judgment nor any part thereof has ever been paid, except the sum of $20 paid thereon August 3, 1897, $14.50 of which was applied on the costs.

"4. That said judgment is based upon a contract in writing for

value, which was made in and payable in this State, of date October 26, 1895, which contract is merged in said judgment now owned by plaintiff.

"4½.    That neither the said M. A. McGuire nor J. N. Shultz now have property within this State subject to execution, unless the money garnished herein is subject thereto, sufficient to pay off and satisfy what remains due on this judgment.

"5.    That on and for a long time prior to September 18, 1903, the defendant J. N. Shultz was a resident citizen of Mills County, Texas, and owned the north one-fourth of section 22, certificate No. 21623, original grantee H. T. & B. Ry. Co., survey of land in Mills County, Texas, and on said last named date and for a long time prior thereto the said Shultz was a married man and the head of a family, consisting of himself, wife and children, and was a citizen of the State of Texas, legally entitled to the homestead exemption allowed by the Constitution and laws of this said State, and the said north one-fourth of section No. 22, consisting of 160 acres of land in the country, was his rural homestead, and actually used and occupied by him and his family as such during the time aforesaid and at the time he and his wife sold and conveyed the same to R. W. Long, as hereinafter stated.

"6.    That on the 18th day of September, 1903, the said J. N. Shultz and his wife, by deed duly authenticated, sold and conveyed the said north one-fourth section No. 22 aforesaid to said R. W. Long, the consideration received by them for said land being $1704 cash in hand paid to said J. N. Shultz by said Long upon the delivery of the said deed, and that $1600 of said money was deposited in the Goldthwaite National Bank, garnishee herein, on the 18th day of September, 1903, in the name of Ida Shultz, but in fact said money was and is the money of said J. N. Shultz, and was deposited by Ida Shultz in the name of Ida Shultz, because the said J. N. Shultz, contemplating and intending to absent himself from Mills County, and not desiring to take all the proceeds of said sale of said homestead with him and fearing that should he deposit said money in his own name anywhere, that the plaintiff herein, even though the said money was not subject to garnishment within six months after the date of said sale, would attempt to garnish the person or persons with whom he might deposit same for safe keeping, and thereby cause said Shultz vexations and expensive litigation, did afterwards on the said 18th day of September, 1903, give his daughter Ida Shultz, his codefendant herein, who was of mature age and discretion, the said sum of $1600, being a portion of the said $1704, the proceeds of the sale of said homestead, to be kept and used by her, not as her own property, but for the benefit of the said J. N. Shultz, during his absence on said journey, in the purchase of such necessities as his family might need during his absence, and in the event any accident should befall him during his absence causing his death, to use said money in purchasing another and different homestead for his said family; but in the event the said Shultz returned or purchased a homestead

elsewhere, as he contemplated and intended to do, then she was to, agreed to and would have returned the said money to the said J. N. Shultz.

"7. That the said $1600 deposited in the Goldthwaite National Bank in the name of Ida Shultz as aforesaid, is a part of the proceeds of the voluntary sale of the homestead of J. N. Shultz, and though deposited in the name of Ida Shultz, is in fact the property of J. N. Shultz.

"8. That at the time the said J. N. Shultz and his wife sold and conveyed their said homestead to said R. W. Long, it was the purpose of J. N. Shultz to reinvest the proceeds of said sale in another home for himself and family. That on the day of said sale, J. N. Shultz, contemplating and intending to go to Oklahoma Territory for the purpose of searching himself a new home, upon which to locate himself and family, on said last named date he did start to Oklahoma Territory for the purpose of looking out a home to purchase, and while gone and on to wit, the 21st day of September, 1903, the garnishment in question was sued out and served upon the Goldthwaite National Bank, and the money therein deposited as aforesaid was tied up.

"9. That $50 is a reasonable attorney's fee for answering the garnishment herein, and that the garnishee employed counsel, as was necessary to do, to file its answer.

"Conclusions of Law.—1. That the deposit of $1600 in the name of Ida Shultz, created, as between the bank, Ida Shultz and J. N. Shultz, the relator [relation] of debtor and creditor, but that the money being in fact the property of J. N. Shultz and held by Ida Shultz in trust for him, the same would be liable to the garnishment in this case but for the fact that it is the proceeds of the sale of the homestead, which sale was made within less than six months next before the service of said garnishment.

"2. I find that the $1600 in question being the proceeds of the voluntary sale of the homestead is not subject to the writ of garnishment in this case, because the sale of said homestead was made September 18, 1903, and the writ served September 21, 1903, less than six months after the sale.

"3. I find that the Act of 1897, exempting the proceeds of the voluntary sale of the homestead from garnishment or execution for a period of six months, is not, as to the contract of J. L. Lewis, under the facts of this case, a retroactive law, and that said act did not, under the facts of this case, impair the obligations of his contract.

"4. I find that the garnishee employed attorneys to file its answer herein, and that the answer [service] of an attorney was necessary to file such answer, and that $50 is a reasonable fee for such services, and that the garnishee should recover the same from J. L. Lewis.

"5. I find that plaintiff Lewis should take nothing by his suit and that defendants should recover of and from him all costs. As between J. N. and Ida Shultz, I find the money to belong to J. N. Shultz, and

that the garnishee should pay the same to him and be protected in so doing."

*Opinion.*—The trial court applied the Act of April 26, 1897, which exempts from garnishment or forced sale for six months after sale, the proceeds of the voluntary sale of the homestead. It is contended by appellant that the act of the Legislature in question should not be given a retroactive effect so as to relieve the proceeds of the voluntary sale of the homestead to an application of debts existing prior to the passage of the law, and that such law, as it affected prior debts, was an impairment of the obligations of the contract creating the debt. In other words, the appellant seeks to apply the doctrine announced in Edwards v. Kerzy, 96 U. S., 595, and Gunn v. Barry, 15 Wall., 610, and other similar cases, which in effect hold that if the effect of an exemption statute is to withdraw from execution or other final process the property of the debtor liable to execution when the debt was contracted, leaving insufficient for the payment of his prior debts, the statute is in violation of the Constitution, in that it impairs the effectiveness of the creditor's remedy to the extent of the property withdrawn, and to that extent impairs the obligation of the debtor's contract.

This principal of law can not be given application in this case, for at the time that the appellant's debt was created, and the judgment in which it was finally merged was rendered, and long before, there was a constitutional provision of this State, and acts of the Legislature in pursuance thereof, creating homestead exemptions and withdrawing such property during its exempt period from liability to the claims of creditors. The facts in the record show that the property which was voluntarily sold was the homestead of Shultz at the time of sale, and the only question that arises is whether voluntarily converting the exempt homestead into money renders the proceeds liable to the claims of creditors.

The statute which exempts the proceeds that might arise from the sale of the homestead for six months, applies to homesteads then existing, as well as those that might be acquired subsequent to the passage of the law; and it is conceded that prior to the present law upon the subject, the proceeds of the voluntary sale of the homestead were subject to the claims of creditors. But as long as the homestead continues, the creditors have no interest in it whatever, and it could not in any manner be subjected to the claims of creditors. The party owning the homestead could do with it as he saw fit, and if the creditors under the law had no claim in the property itself, we see no reason why the Legislature would not have the authority to exempt the proceeds of the sale of such property.

In the well-considered case of Chase v. Swayne, 88 Texas, 220, it is held that the proceeds of a policy of insurance upon the homestead that arose from its involuntary destruction by fire, were not subject to the claims of creditors; that the homestead exemption followed the pro-

ceeds that arose from the involuntary destruction or loss of the homestead, and it is there said that the proceeds stand to the owner in place of the property lost, and that the destruction of the house by fire is an involuntary conversion of the house into money, and the provision of the Constitution and statutes exempting the former will also protect the latter.

The act of the Legislature in exempting the proceeds that might arise from the voluntary sale of the homestead had the effect of putting such proceeds, so far as their exemption was concerned, upon the same plane as the proceeds that might arise from an involuntary destruction of the homestead, as is established by the case referred to. No right of the appellant was impaired by this act of the Legislature. He had no interest in the property that the proceeds represent before it was voluntarily sold; and if the case of Chase v. Swayne is correct, as exempting the proceeds that arise from an involuntary destruction of the homestead, on the ground that it is a mere change in the form of exemption, in that the proceeds represent the home, we see no reason why the same principle should not be applied in aid of the statute in question.

The record in this case does not inform us just at what time appellee Shultz acquired the homestead that he voluntarily sold. It merely states that for a long time prior to September 18, 1903, the defendant Shultz was occupying the premises as a homestead; but if it be conceded that the homestead was acquired after the debt of the appellant was contracted, that would not affect the right of the appellee to his homestead free from the claims of his creditors.

The rule is well settled in this State, and most of the States, that where the debtor, although insolvent, invests his available assets in a homestead, it does not subject the latter to the demands of his prior creditors. 15 Am. and Eng. Enc. of Law., 2 ed., 617; Chase v. Swayne, 88 Texas, 221; Bell v. Beazley, 18 Texas Civ. App., 641; Finn v. Krut, 13 Civ. App., 45; North v. Shearn, 15 Texas, 175, and Wallas, Landes & Co. v. Wendler, 3 Texas Ct. Rep., 277.

In this last case, the doctrine was applied so as to protect the homestead that was acquired during the time that there was in existence the abstract of a judgment lien of a creditor. It is there held that the homestead right attached immediately upon acquisition of the property, and was superior to the judgment lien.

What we have said practically disposes of all the questions raised in the assignments of error, except the point presented in the fifth assignment. If the property was exempt, it would be no fraud upon the creditors to give it to his daughter Ida Shultz; but the findings of fact do not support the contention of appellant, as urged in this assignment. The facts are that the proceeds of the sale remained the property of Shultz, and that his daughter Ida Shultz was really holding it for his benefit.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused November 28, 1904.