## SOUTHERN IRR. CO. v. WHARTON NAT. BANK et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 7, 1912. Rehearing Denied Feb. 28, 1912.)

1. BANKRUPTCY (§ 396*)—EXEMPTIONS—HOMESTEAD.

Under Bankr. Act July 1, 1898, c. 541, § 6, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), providing that the act shall not affect the allowance to bankrupts of the exemptions pre-

scribed by the state laws in force at the filing of the petition in the state wherein they have their domicile, a homestead of a bankrupt, exempt from sale for debts under the laws of the state, is exempt to the bankrupt, and an assignment of corporate stock by the bankrupt to lift a lien from the homestead, though made while he is insolvent and in contemplation of bankruptcy, and within four months of bankruptcy, is valid.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 396.*]

2. BANKRUPTCY (§ 396*)—EXEMPTIONS—STATUTES—CONSTRUCTION.

The court, in applying the bankruptcy laws to exemptions, is governed by the interpretation of the exemption laws of the state of the domicile of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 396.*]

3. CORPORATIONS (§ 123*)—STOCK—CONVERSION—ACTS CONSTITUTING.

Where a bank and its president in possession of corporate stock knew that the stock belonged to a person claiming under a valid assignment of a bankrupt, and delivered the stock to the trustee in bankruptcy, who sold the stock to the president, who appropriated the same, the bank and the president were liable to such person for conversion thereof.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 123.*]

4. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL.

Where, in action for conversion of corporate stock, the testimony as to the value of the stock is conflicting, the court, on appeal from an erroneous judgment for defendant, may not render a proper judgment, but must reverse the judgment and remand the case to ascertain the value of the stock, and render judgment for the value, with interest from the conversion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Wharton County; Wells Thompson, Judge.

Action by the Southern Irrigation Company against the Wharton National Bank and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

G. G. Kelley, Lane, Wolters & Storey, and Wm. A. Vinson, for appellant. W. L. Hall, for appellees.

FLY, J. This is a suit instituted by appellant against the Wharton National Bank and H. J. Bolton, president of said bank, to recover the value of 10 shares of the Bolton Warehouse Company, a private corporation, domiciled at Lane City, Wharton County, Tex., which shares, it was alleged, were transferred by E. W. Turner to the Bay Prairie Irrigation Company, and by it transferred and assigned to appellant, and that the same had been deposited in the Wharton National Bank, and by it were converted to the use and benefit of appellees. The bank answered, admitting that, on or about November 30, 1904, E. W. Turner had on deposit with it the 10 shares of stock, and that it made no claim to said stock at that date or at any other time; that on or about November 30, 1904, the said Turner filed a voluntary petition in bankruptcy in the federal court at Galveston, asking that he be adjudged a bankrupt, and he was so adjudged by the court, and the shares of stock were taken possession of by the trustee in bankruptcy with other property belonging to Turner, and that said bank has since that time had nothing to do with the shares of stock. No original answer of H. J. Bolton appears in the record; the only pleading credited to him being what is styled "First Supplemental Answer of H. J. Bolton," which states that it was filed in answer to "plaintiff's first supplemental petition." In that pleading, knowledge of the bankruptcy proceedings was charged to have come to appellant, and that it knew of the sale of the stock to Bolton by the trustee in bankruptcy. In the supplemental petition filed by appellant, it was alleged that it was not a party to the bankruptcy proceedings; that the stock in controversy was transferred to the Bay Prairie Irrigation Company by Turner, before the application in bankruptcy was filed, to pay off a certain vendor's lien on the residence homestead of Turner, and the same was so applied; and that appellees were duly notified of said transfer before they purchased the stock. The cause was tried without a jury, and judgment was rendered in favor of appellees.

The uncontroverted evidence showed that E. W. Turner owed the Bay Prairie Irrigation Company for the land on which he was living, and which was his homestead, and, in order to make a payment thereon, sold and transferred to said company his 10 shares in the Bolton Warehouse Company, which had been deposited with the Wharton National Bank as collateral to secure a debt which had been paid. The stock was demanded from the bank; but delivery of it was not made by the bank. With full knowledge by appellees that the shares of stock had been transferred by Turner, they were delivered to the trustee in bankruptcy, and were by him sold to Bolton, the president of the bank. The transfer of the stock was made by Turner before he applied to be adjudged a bankrupt, but when he was insolvent. The transfer was made less than four months before Turner filed his application in bankruptcy, and the Bay Prairie Irrigation Company knew that Turner was contemplating applying to the federal court to be adjudged a bankrupt when he transferred shares to it. There is nothing to indicate that the shares were not sold in good faith to lift a lien from the homestead of Turner, and were sold in good faith to appellant. Turner had nothing else but the shares of stock with which to pay the indebtedness on his homestead. Neither appellant nor the Bay Prairie Irri-

gation Company was a party to the bankruptcy proceedings.

The trial judge held that the transfer of the shares by Turner to the Bay Prairie Irrigation Company, the president of which, Jonathan Lane, was Turner's attorney, was such preference of a creditor as is forbidden by law, and no title passed by the transfer, and that the United States District Court had the authority to determine that the shares which were placed by Turner in the schedule of his property should be sold, and to declare a lien on it in favor of the Deaton Grocery Company, and to have the same sold, and that such sale passed the title to Bolton, and that the judgment of that court was not subject to revision.

[1] It is provided in the bankruptcy act of July 1, 1898, c. 541, § 6, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424): "This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." Under the provisions of that act, it is clear that Turner's homestead would be exempt from sale for debts, because the laws of Texas so declare; and the only question which arises is the right of the bankrupt to use money or other property belonging to his estate to pay off and discharge incumbrances upon the homestead. The question has been answered in the affirmative by the Supreme Court of Texas, in the case of Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742, in which case Chase was insolvent, and, in contemplation of such insolvency, invested in certain improvements the sum of $125,-000, "with the purpose of withdrawing and abstracting from his assets an unnecessary and unreasonable amount, thereby placing the same beyond the reach of his creditors." The court said: "The proposition in effect is that an insolvent debtor cannot invest his money or property in a homestead, by which it will be protected from the payment of his debts. The object of the constitutional provision is to protect the homes of insolvent debtors from forced sale, and if the contention of plaintiff be correct only such as become insolvent after the investment is made can be protected."

Following the case of Chase v. Swayne, it was held, in Finn v. Krut, 13 Tex. Civ. App. 36, 34 S. W. 1013: "A disposition of property, subject to execution, for the purpose of procuring a homestead would not be deemed a fraud upon creditors. The head of a family has the right to invest his property in a homestead, and creditors without lien cannot complain that in doing so he uses property that could be levied on for debt, even though he is in failing circumstances." Again, in the case of Bell v. Beazley, 18 Tex. Civ. App. 639, 45 S. W. 401, it was said: "It appears that all of the property owned by Senter at that time, subject to exemption, was his interest in the stock of goods in question. This he exchanged for the homestead at a time when he was in failing circumstances, and might be said actually insolvent. The fact that one in failing circumstances or practically insolvent disposes of all of his available assets in exchange for a homestead is not in law considered a fraud upon creditors." The same doctrine is reiterated in Lewis v. Bank, 36 Tex. Civ. App. 437, 81 S. W. 797.

[2] The decisions referred to, as well as others, have given interpretation to the exemption laws in Texas, and in applying the bankrupt laws of the United States to exemptions that interpretation would govern. In re Jones (D. C.) 97 Fed. 773; Richardson v. Woodward, 104 Fed. 873, 44 C. C. A. 235; In re Beauchamp (C. C.) 101 Fed. 106; In re Stone (D. C.) 116 Fed. 35; Huenergardt v. Brittian, 116 Fed. 31, 53 C. C. A. 505; Smalley v. Laugenour, 196 U. S. 93, 25 Sup. Ct. 216, 49 L. Ed. 400. In the Stone Case, cited, the case of Chase v. Swayne is cited with approval.

In the case of Bank v. Glass, 79 Fed. 706, 25 C. C. A. 151, in discussing a case of this character, Judge Sanborn held: "If he takes property not exempt from judicial sale and applies it to this purpose, he merely avails himself of a plain provision of the Constitution or the statute enacted for the benefit of himself and his family. He takes nothing from his creditors by this action in which they have any vested right. * * * Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud."

From the foregoing authorities, we arrive at the inevitable conclusion that the assignment of the shares of stock by Turner to appellant to lift a lien from his homestead, although made while he was insolvent and was contemplating and preparing an application in bankruptcy, was valid and binding. The inclusion by Turner of the shares in the schedule of his assets could not affect the title of his vendee; nor could the order of sale issued by the federal court, nor the sale thereunder, affect the rights of the purchaser of the stock. Neither the Bay Prairie Irrigation Company, nor the appellant, was a party to the bankruptcy proceedings, and no action taken in regard to the property of either could bind them. It follows that the testimony of W. L. Hall as to what occurred in connection with the bankrupt proceedings was improperly admitted, not only because it was not the best evidence, but because it could in no manner bind appellant or affect its right to the shares of stock.

[3] Appellees had the shares in their possession; they knew that they belonged to

another than the bankrupt; and yet they delivered the property to the trustee, and H. J. Bolton, the president of the bank, bought the shares and appropriated them. Appellees are liable for the conversion of the property, and should be compelled to pay for it.

[4] The testimony was conflicting as to the value of the stock, and consequently this court is not in possession of sufficient uncontroverted data, as to value, upon which to base a judgment, and that alone deters this court from rendition of the proper judgment.

The judgment is reversed and the cause remanded, with instructions to the lower court to inquire into and ascertain the value of the 10 shares of stock, and when that is ascertained to render judgment in favor of appellant, and against appellees, for that sum, with interest from the time of the conversion at 6 per cent. per annum.