## MOORE v. PARRISH et al.

### No. 4180.

Court of Civil Appeals of Texas. Amarillo.

March 19, 1934.

Rehearing Denied April 16, 1934.

Ayres & Ayres, of Floydada, for plaintiff in error.

L. G. Mathews, of Floydada, and E. A. Watson, of Crosbyton, for defendants in error.

MARTIN, Justice.

On May 12, 1932, George T. Moore, hereinafter called appellant, recovered a judgment in the district court of Floyd county against R. M. Parrish and E. L. Parrish for the sum of $6,413.54, with a foreclosure of a deed of trust lien on 320 acres of land. Said land was sold under an order of sale and bid in by appellant, said judgment being credited with the sum of $468.35. Thereafter an alias execution was issued to collect the deficiency judgment, shown in said instrument to be $6,039.42. This execution was levied by the sheriff of Crosby county on 240 acres of land claimed to be owned by Chester Parrish, herein called appellee, son of R. M. and E. L. Parrish. Thereupon Chester Parrish filed a suit in the district court of Crosby county, Tex., claiming said 240 acres of land under a deed from R. M. and E. L. Parrish as gran-

tors, dated April 14, 1932, which deed recited a consideration of "$10.00 cash in hand paid by Chester Parrish * * * and the natural love and affection which we have and bear for our son." It was in said petition alleged that at the time of the said levy and prior thereto, Chester Parrish was the owner of said land, and that the real and true consideration for the giving and accepting of said deed to said 240 acres of land was in settlement of $4,700 theretofore loaned and furnished to the said R. M. Parrish and E. L. Parrish by Chester Parrish, and that at said time R. M. and E. L. Parrish were solvent and had other property that was reasonably worth any indebtedness owed by said parties. It was then alleged, in substance, that appellant had procured the judgment aforesaid and levied the execution already mentioned and he asked for writ of injunction restraining the sheriff and appellant Geo. T. Moore from causing said land to be sold under said alias execution, etc.

To this petition the appellant Geo. T. Moore answered by general and special exceptions not necessary here to set out, by general denial, and filed a cross-action against Chester Parrish, R. M. Parrish, and E. L. Parrish, alleging that R. M. and E. L. Parrish long prior to the date of the deed to said 240 acres of land was indebted to appellant in the sum of $5,000, evidenced by a note of said amount and secured by a trust deed. He then set up specifically the foreclosure proceedings in Floyd county already adverted to and specifically alleged:

"That said R. M. Parrish and E. L. Parrish are the father and mother, respectively, of plaintiff herein, Chester Parrish, and with a view, and with the intent to hinder, delay, and defraud the creditors of said R. M. Parrish, and especially with the view and intent to hinder, delay and defraud this defendant, did as alleged by plaintiff, on the 14th day of April, 1932, execute the deed mentioned in plaintiff's petition. * * *

"That said deed shows upon its face that it was wholly without consideration, and that no consideration in truth, as evidenced by said deed, passed to said R. M. Parrish and E. L. Parrish from plaintiff herein. Chester Parrish; but that said conveyance was a voluntary one upon the part of said R. M. Parrish and E. L. Parrish, and was wholly without consideration, and was made as hereinabove alleged for the purpose of hindering, delaying and defrauding the creditors of said R. M. Parrish, and especially for the purpose of hindering, delaying and defrauding this defendant."

He further alleged a judgment lien against said land and asked for its foreclosure.

R. M. and E. L. Parrish filed a disclaimer to the 240 acres of land involved in this suit.

The court submitted the case upon two special issues, which, together with the answers of the jury thereto, were as follows:

"Special Issue No. 1: Do you find by a preponderance of the evidence that the consideration recited in the deed from R. M. Parrish and wife to Chester Parrish to be the true consideration for the conveyance of the property described in the deed? Answer yes or no." "No."

"Special Issue No. 2: What do you find, from a preponderance of the evidence, to be the true consideration for the land conveyed by R. M. Parrish and wife to Chester Parrish? Answer as you may find." "$4700.00."

The court entered judgment upon these findings for appellee Parrish.

Facts sufficient to illustrate the law issues herein discussed will appear in this opinion.

■■ Both Chester Parrish and his father testified, in substance, that there was advanced to E. L. Parrish by appellee Chester Parrish from 1916 to 1927, inclusive, various sums which aggregated about $4,700, and that the 240 acres in controversy here were conveyed to Chester Parrish in settlement of this debt. Proper objection was made to all of this testimony because it varied the recitals of consideration in the deed, it being claimed that in a suit to set aside a voluntary conveyance as in fraud of creditors, the grantee in such deed may not testify to a consideration different from that recited therein. Upon the authority of Finn v. Krut, 13 Tex. Civ. App. 36, 34 S. W. 1013, we overrule this assignment. It is therein expressly decided, as we construe this case, that such evidence is admissible. An expression by Judge Neal to the contrary is found in Duveneck v. Kutzer, 17 Tex. Civ. App. 577, 43 S. W. 541, but a careful examination of this last case reveals that he did not have this exact question before him and his expression appears to us to be dicta. We will not pause here to cite authorities for the well-known rule that recitals of consideration in a deed not contractual in nature may be contradicted or explained by parol evidence. The court in Finn v. Krut, supra, follows this rule and writ of error was denied by the Supreme Court.

By bill of exception No. 2 appellant is shown to have offered in evidence certified copy of a deed to a 160-acre tract of land, dated February 11, 1931, from R. M. and E. L. Parrish to appellee Chester Parrish, which recited a cash consideration of $3,500 and the execution and delivery of a vendor's lien note for $1,500. On objection this was excluded. It is contended by appellant that since this was a circumstance to show fraud and since it tended to show that the consideration of $4,700 alleged to have been given for the 240 acres in controversy had not been paid, that such action of the court was error. We are unable to agree that the action of the court in excluding this naked deed alone, unaccompanied by an offer to prove any facts in connection therewith, presents error. Standing alone, this deed tends to show that appellee had on the date in question $3,500 in cash, and that near the date of the deed to the 240 acres in controversy, R. M. Parrish must have possessed assets of about $5,000, which were the proceeds of this sale of land. The testimony further from the appellant's witnesses is that the 320 acres of land foreclosed on was worth on April 14, 1932, at a forced sale, the sum of $10 per acre. Giving effect to the recitals in said deed, it is inferable that R. M. Parrish was solvent when the deed to the 240 acres in question was made and that Chester Parrish had ample funds on that date, rendering it more probable that he was supporting his father and mother as claimed by him. We cannot see how this testimony could have helped appellant. If there was properly presented as error the action of the court in refusing to allow appellant to inquire into this $4,700 consideration, or any fact tending to show lack of ability by Chester Parrish to pay same, a different question would be before us. Instead, the statement of facts reveals that appellee's counsel withdrew any objections to appellant proving, or attempting to prove, the lack of ability of Chester Parrish to pay the $4,700 consideration for the land involved in this suit. Presumably appellant was not prevented from going into such matter. If there was error in excluding this deed under the above circumstances, it was harmless, in our opinion.

We observe in passing that this case was tried upon the theory in the lower court that the only issue involved was the question of whether or not Chester Parrish actually paid to his father the $4,700 heretofore mentioned. It was submitted without objection from appellant and apparently with his acquiescence, upon this issue. Upon this one issue, a certified copy of the naked deed alone offered in evidence did not tend to disprove the theory or any testimony of appellee or of any witness for him, or to establish any fact affecting the one issue which appellant has impliedly agreed controls the disposition of this case.

Finally it is argued that the court committed reversible error in permitting appellee's counsel to make certain statements hereafter quoted, in his argument to the jury, over appellant's objection.

Detached from its proper background, this argument appears to have been manifestly improper. We reproduce it here in full:

"Gentlemen of the Jury, this is the case we have here: We have Geo. T. Moore sitting up in Kansas City with his knees under a mahogany desk, and with a white collar on, and, according to Mr. Daniel, lending money at about fifty per cent of the value of the land, and after a foreclosure on it, and during these times of depression, buying it in for a song, and singing it himself, and taking a deficiency judgment, he comes down here to Crosby County, and is trying to take the land of a poor farmer, Chester Parrish, that he had bought from his father for an honest debt, and that he had let his old father have for medicine and to live on. Gentlemen, you are not going to permit this to happen. If you permit this to happen, it will bring chaos and ruination to the farmers of this county. But, Gentlemen of the Jury, you are not going to permit such things to happen. I ask you to answer Special Issue No. 1 'Yes'; and to answer Special Issue No. 2 ' $4700.00.'

"To which language, counsel for defendant, Geo. T. Moore, objected, because same was uncalled for by the record, highly inflammatory, and calculated to prejudice the minds of the Jury against defendant Geo. T. Moore, and which objection was by the Court overruled, and the Court said to L. G. Mathews, proceed with your argument."

The objection made was to the whole of this statement. Some of it was a restatement of facts proven without objection on the trial of the case, and another portion of it was a legitimate inference from facts claimed to be in dispute. The court was called on to condemn it as a whole, without being given an opportunity to separate that portion which was improper from that which was legitimate. For this reason the exception as taken and presented here by bill of exception No. 1 shows no error, unless it can be said that part of it was of such an inflammatory nature as that it could not be cured. Cases sustaining first clause of statement: Wichita Falls,

R., etc., Co. v. Emberlin (Tex. Civ. App.) 274 S. W. 991, 997; Norwich Union Ind. Co. v. Smith (Tex. Com. App.) 12 S.W.(2d) 558; 3 Tex. Jur. p. 223. Cases sustaining second clause of statement: Robbins v. Wynne (Tex. Com. App.) 44 S.W.(2d) 946; Texas Employers' Ins. Ass'n v. Bradford (Tex. Civ. App.) 62 S.W.(2d) 158. By appellant's witnesses it was proven: That Geo. T. Moore lived in Kansas City and had extensive loans in Floyd county, keeping a man employed to look after them; that the loan to R. M. Parrish was for $5,000 on land estimated on the original date of the loan to be worth $10,000, and in April, 1932, to be worth $3,200 at forced sale; that Parrish was delinquent for one year's interest when foreclosure proceedings were started; that such land was bid in for less than $500, leaving a deficiency judgment against Parrish of about $6,000. Testimony for appellee was: That his father, past seventy years old and in bad health, was assisted continually from 1916 by appellee, the money so loaned to him aggregating about $4,700; that he owned about 720 acres of land during said time, part of which was worked by appellee as a tenant farmer; that the debt thus created was discharged by a conveyance of the 240 acres involved here. The facts tend to corroborate appellee's testimony as to the consideration for this conveyance, and the jury was amply warranted in believing it and returning the verdict indicated above. Indeed, we would be surprised at any other, and do not believe that another trial upon the same facts, without the above argument, would produce a different result. The possibility of injury from such an argument must be measured by its relation to the entire case and to facts that are well known to the jury and which every intelligent person knows are in the mind of the jury whether called to their attention or not. The record here shows that a half section of farming land with two sets of improvements was bid in by appellant for less than $2 per acre, which was worth at about that time $10 per acre and at an earlier date over $30 per acre. On this basis it would take around 4,000 acres of farming land to pay appellant's debt, though 320 acres was thought to be sufficient collateral at a prior date. Did the statement that such procedure would bring "ruination to the farmers of the county" tell them anything not already well known to them? Obviously not, unless we assume this case was tried by a group of morons, unable to think, and who never heard a radio address or read a newspaper. Strictly speaking, the statement referred to was out of record, and yet it related to a subject as well known to the average juror as the ten commandments. We are not able to believe that the supposed harmful effect of this and other improper remarks in the above could not have been cured by either a voluntary withdrawal or by a court instruction. Some of the other remarks, if improper, were but a recital of, or legitimate deductions from, proven facts, some of them introduced by appellant himself. If they are inflammatory, so are the facts. We do not mean to give our approval to such remarks, but we are constrained to hold that the matter as presented, in the light of this record and the existing situation, presents no reversible error. We are influenced somewhat to thus hold by the conviction that a new trial would, under the same facts, and without these statements, result in the same verdict as we have here.

The judgment is affirmed.