In the matter of COMMERCIAL CANDY COMPANY, Debtor.

Daniel J. FLANIGAN, Trustee in Bankruptcy, Plaintiff,

v.

Panagiotis DRIMALAS and Cynthia Drimalas, Defendants.

Bankruptcy No. 80–01257–3.
Adv. No. 81–0828–3.

United States Bankruptcy Court,
W. D. Missouri, W. D.

April 12, 1982.

Arthur B. Federman, Kansas City, Mo., for plaintiff.

Donald L. Crow, Kansas City, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SUM OF $21,000 FROM DEFENDANTS

DENNIS J. STEWART, Bankruptcy Judge.

This matter came on before the court for hearing of the merits before the court of bankruptcy on March 17, 1982, whereupon the plaintiff appeared by counsel, Arthur B. Federman, Esquire, and the defendants appeared by counsel, Donald L. Crow, Esquire, and the defendant Panagiotis Drimalas also appeared personally.

The evidence which was then adduced on the plaintiff's claim for judgment in the sum of $21,000 warrants the following findings of fact: Between the dates of February 7, 1980, and April 26, 1980, the debtor corporation, on the authority and by the acts of Theodore Drimalas, its former president, paid the total sum of $21,000 to defendant Panagiotis Drimalas in several payments on several different dates throughout that period of time.[1] On the date of each of the payments, the debtor was insolvent.[2] During this period of time, Panagiotis Drimalas was employed by the debtor corporation as a vice president. The monies thereby paid to him were in excess of the current salary which he received in addition to those payments. The defendant Panagiotis Drimalas claims that the payments were made on account of (1) some $10,000 owed him by the debtor corporation on account of an earlier promise made to him by his brother and president of the debtor corporation to pay him an annual salary of $30,000, of which he had received only $19,000; (2) another promise made to him by his brother and president of the debtor corporation to the effect that he should receive 10% of a $200,000 sale price of a division of the debtor corporation when it was sold in 1980 [3]; and (3) as a consulting fee which he was to receive for aiding and assisting the new owners of the same division of the debtor corporation in their takeover of operations for a period of five months subsequent to the takeover. In this regard, the testimony of Panagiotis Drimalas is contradicted by that of Lauren Millen, the former bookkeeper of the debtor corporation, who testified that she knew nothing of an agreement to pay an annual salary of $30,000 and by that of Gary Bond, a member of the partnership which purchased part of the debtor corporation, who stated unequivocally in his testimony that Panagiotis Drimalas had not actually rendered any assistance to his organization, even though it had a provision in the contract for purchase and sale of a division of the debtor corporation [4] that he render such aid and assistance. According to the clear and uncontradicted testimony of the defendant Panagiotis Drimalas, the $21,000 paid him by the debtor corporation was deposited in a bank account owned jointly by him and his wife, the defendant Cynthia Drimalas, upon which he wrote

1. Although the payments were interpersed throughout this period, the evidence leaves no question that the payments were all made within 90 days of the commencement of the title 11 proceedings and that the total of them is $21,000.

2. Again, the evidence is uncontradicted on this point.

3. This promise is alleged by the defendant to have been an oral agreement never reduced to writing.

4. According to Mr. Bond's testimony, the provision for the aid and assistance of Pangiotis Drimalas was included in the contract of sale as a mere formality; the assistance which was really desired by his firm was that of Theodore Drimalas (which was also provided for in the same contract).

checks to pay for the joint living expenses of the defendants.[5]

## Conclusions of Law

■ Based on these facts, the court is compelled to conclude that all of the elements of a preferential transfer are present in respect to each of the payments comprising the $21,000 total. Although the plaintiff did not initially request relief on the ground of preferential transfer pursuant to § 547 of the Bankruptcy Code, he moved, at the close of evidence, to amend his complaint to this effect to conform to the evidence. The motion was granted.[6] The evidence clearly shows that all the transfers were within 90 days of the date of commencement of these title 11 proceedings (April 26, 1980), that, according to Panagiotis Drimalas' own claims, the transfers were on account of antecedent debts; and that they were made at times when the uncontradicted evidence demonstrates the debtor corporation to have been insolvent. Further, the trustee is aided by the presumption of insolvency contained in § 547(e)(4) of the Bankruptcy Code. All of the $21,000 is recoverable by the trustee a preference under any view of the evidence.

■ Separately and independently, it should also be concluded that the same $21,000 is recoverable as a transfer made while insolvent and for inadequate consideration within the meaning of § 548(a)(2) of the Bankruptcy Code. The testimonial contention of the defendant Panagiotis Drimalas that anticedent obligations existed in favor in the form of his brother's promises to pay him $10,000 additional salary and 10% of the sale price of a division of the corporation and a fee for assisting and training the purchaser is contradicted. As noted above, the bookkeeper charged with the duty of making the salary checks knew nothing of the existence of this agreement to pay $10,000 extra in salary. A member of the organization which purchased a division of the debtor corporation testified that Panagiotis Drimalas rendered no assistance or training. And the written contract for that purchase and sale does not pertinently provide anything other than that the debtor corporation is to receive the proceeds of sale. In considering the relevant issues on the issue of credibility, including the appearance and demeanor of the witnesses, it must be found these alleged prior promises or agreements did not exist and that, therefore, the transfer of these monies from the debtor corporation to Panagiotis Drimalas was for inadequate consideration within a year of the date of the commencement of the title 11 proceedings while the debtor corporation was insolvent. It is therefore also avoidable as a fraudulent transfer within the meaning of § 548(a)(2) of the Bankruptcy Code.

■ Further, when these amounts were transferred without any obligation of the debtor corporation to pay them, while the debtor corporation was insolvent, within a year of the date of the commencement of title 11 proceedings, to an insider of the corporation within the meaning of the Bankruptcy Code[7] and a close relative of the debtor corporation's president, and at a time when corporate fortunes were decidedly on the decline, the confluence of so many badges of fraud warrants a conclusion that the transfers were also with actual intent to hinder, delay, or defraud creditors, of whom there were many at the time,[8] within the meaning of § 548(a) of the Bankruptcy Code.

Therefore, for the foregoing reasons, the plaintiff trustee in bankruptcy is entitled to

5. This was admitted by Panagiotis Drimalas in the course of his testimony in this action.

6. The motion was granted in accordance with Rule 15(b) of the Federal Rules of Civil Procedure which pertinently provides that pleadings shall be deemed amended at the close of the evidence to include any and all issues tried by express or implied consent or acquiescence.

7. "Insider" includes a director or officer of the debtor or a "relative of a general partner, director, officer or person in control of the debtor." See § 101(25) of the Bankruptcy Code.

8. Cf. *Burtrum v. Laughlin*, 7 B.R. 924 (Bkrtcy. W.D.Mo.1981), and cases and authorities there cited.

recover the value of the proscribed transfers, the sum of $21,000.

The question remains as to whether the trustee may recover that value against the defendant Panagiotis Drimalas only. Under § 550 of the Bankruptcy Code, he may recover from the immediate transferee or the ultimate transferee, or both.[9] The evidence is unequivocal to the effect that the money here involved was ultimately transferred into a bank account held jointly by Panagiotis and Cynthia Drimalas and thereafter used for their joint benefit. The trustee may therefore recover from both defendants, jointly and severally, to the extent of a single satisfaction of the sum of $21,000.[10]

Accordingly, it is hereby

ORDERED AND ADJUDGED that the plaintiff have and recover the sum of $21,000 from the defendants.

9. "[T]he trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer

was made; or ... any immediate or mediate transferee of such initial transferee." Section 550(a) of the Bankruptcy Code.

10. See note 9, *supra*.